*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. J. LOMBARD, Minor.

FOR PUBLICATION
May 30, 2024
9:05 a.m.

No.  367714
Wayne Circuit Court
Family Division
LC No.  22-001595-NA

Before: MALDONADO, P.J., and PATEL and N. P. HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court order terminating her parental rights to her minor child, LJL, under MCL 712A.19b(3)(a)[1] (child deserted), (c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if returned to parent).  We affirm the trial court's findings and conclusions regarding statutory grounds, but vacate the trial court's best-interests determination, and remand for the trial court to consider whether termination is appropriate without regard to a generalized policy disfavoring guardianships for children under a specified age.

## I.  BACKGROUND

This case arises out of the termination of respondent's parental rights to her son, LJL.  In October 2022, petitioner, the Department of Health and Human Services (DHHS), sought to remove LJL from respondent's care.  At that time, LJL was four years old.  DHHS filed a

---

[1] The trial court found that termination was warranted under MCL 712A.19b(3)(a).  However, it failed to articulate the specific statutory subsection underlying its finding.  To the extent that the trial court's omission amounted to error under MCR 3.977(I)(3), that error alone would not warrant reversal because only one statutory ground need be established to terminate a respondent's parental rights.  *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).  Furthermore, respondent abandoned the issue by failing to challenge the trial court's finding under MCL 712A.19b(3)(a) on appeal.  See *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 517; 838 NW2d 915 (2013).

temporary custody petition alleging that LJL had previously been diagnosed with autism spectrum disorder. The petition further alleged that LJL was found walking outside of his home, unsupervised, while under respondent's care. Respondent admitted to Child Protective Services (CPS) that she struggled with substance abuse and mental health conditions. She tested positive for cocaine, fentanyl, and heroin. She also tested negative for suboxone (buprenorphine/naloxone) despite her prescription for the opioid-use-disorder medication. LJL's pediatrician informed CPS that LJL was not up to date on vaccines or well-child visits. She also informed CPS that LJL was treated for severe diaper rash twice within a six-month period. The trial court authorized the temporary custody petition after a referee conducted a preliminary hearing. DHHS removed LJL from respondent's care and placed him with his maternal grandfather.

In February 2023, the trial court found grounds to exercise jurisdiction over LJL under MCL 712A.2(b) after a different referee conducted a combined adjudicatory and dispositional hearing. The trial court also adopted a service plan for respondent. Per the service plan, respondent was to undergo a substance abuse assessment and psychological examination, attend counseling and parenting classes, regularly visit LJL, maintain contact and cooperate with DHHS, refrain from using intoxicants, participate in weekly drug screens, obtain suitable housing and a legal source of income, and participate in LJL's counseling and schooling.

In March 2023, the referee conducted a dispositional review hearing. Respondent failed to appear. Respondent's attorney informed the referee that he could not locate her. DHHS presented evidence that she neglected to engage in any aspect of her service plan. Respondent's counsel requested that DHHS explore the possibility of a guardianship as the permanency plan. The referee addressed the request but declined to modify the permanency plan. In doing so, the referee noted that DHHS wished to pursue reunification. The referee also explained that he had his "own opinions on guardianship for five-year-olds, but that really is not a right question at this point because we haven't even determined whether or not—you know mother's complying well enough . . . ."

In June 2023, the referee conducted a supplemental dispositional review hearing. Respondent failed to appear. Respondent's attorney did not provide an explanation for her absence. DHHS presented evidence that respondent visited LJL on one occasion but otherwise neglected to engage in any aspect of her service plan. The following month, DHHS filed a supplemental petition requesting that the trial court terminate respondent's parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (c)(*ii*), (g), and (j).

In August 2023, the referee conducted a termination hearing. Respondent again failed to appear. Respondent's attorney did not provide an explanation for her absence but moved for adjournment. The referee denied the motion without articulating his reasoning on the record. At the hearing, DHHS presented evidence that respondent did not take any steps to initiate or complete her service plan, nor did she receive treatment for her substance abuse issues. She did not obtain suitable housing or income. She visited LJL on one occasion but otherwise had no contact with him since December 2022. DHHS also presented evidence that LJL's maternal grandfather was willing to adopt him, was able to provide stability and permanence, and shared a bond with him.

During the termination hearing, respondent's attorney asked the referee to place LJL in a guardianship with his maternal grandfather in lieu of terminating respondent's parental rights. The referee addressed the issue of guardianship, stating:

> I'm just going to come right out of the gate and say guardianship is not an option. We—this Court generally frowns upon guardianships for children under l0 years old to begin with, and again those are usually done where the parent has some sort of disability that is often beyond their control or what we're able to get them things with cognizant—cognitive impairments and such things we don't have that issue here.
>
> Moreover, we have a child with special needs who is in need of permanency and stability. We have a paternal [sic] grandfather who is more than willing to provide permanency and stability. So and again, given the age of the child, guardianship is not a good idea. And again guardianships are—are the furthest thing in the world from permanency or stability.
>
> Is often as seen in this court, [when] guardianships one [sic] issued[,] especially the children under 10 when things get difficult when they get to be 12, 13[,] 14 and a little bit more difficult to handle around the home[,] guardians often or sometimes decide they don't want to be guardians anymore and retract it, then we have a 13[] or l4-year-old with no ability to be reunified and no real adoption prospect. So that's not an optimum solution, especially in this matter. So what I'm going to say right offhand that that's really not on the table here today.

The referee found that DHHS established statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(a), (c)(*i*), (g), and (j). The referee also found that termination served LJL's best interests, reasoning:

> As to the best effort—interests of the child here, the child is with a caregiver who wishes to play in long term, is well aware of the child's special needs and is addressing those special needs. Wants to address them—also understands that his daughter, the child's biological mother, is not in a position to parent a child. Wishes she would get better. Wants her to get better. He's a father. He wants his daughter to get better, but he also knows that if she's not going to get better, he is going to be the one to step up and take care of his grandchild and seems he is more than ready, willing, and able to do that.
>
> So we have here the situation of what is in the best interest of [LJL] at this point. At this point, he's five years old. He's residing with the only family member who's ever cared for him on any real basis at all, who is aware of his special needs, knows how to address them, is willing to address them versus the idea—idea that perhaps we should give mother another chance because it's in—somehow in [LJL's] best interest to not[] have her rights terminated and hold out hope that she will get herself together and be able to parent him. Except the problem is that is not going to happen within a reasonable amount of time.

Yes, [LJL's] five years old [and] mother has shown no inclination to do anything, [a]nd in fact actively reported to being an active user in active addiction mode in—in June, I think it was June of this year to the worker. And I'm quite simply, there's no permanency, no stability, and this child deserves permanency and stability, and—needs[] [p]ermanency and stability, given his—his special needs, the autism and we have at our disposal a loving, caring relative who is willing to do exactly all of that.

This is more than a preponderance of the evidence. This is a landslide of the evidence that says it is absolutely in this child's best interest to terminate mother's parental rights and leave him open to adoption by the grandfather. And this matters to the Court does find it's in the best interest to terminate the mother's parental rights . . . .

After the hearing, the trial court entered an order terminating respondent's parental rights under MCL 712A.19b(3)(a), (c)(*i*), (g), and (j). The order provided that termination served LJL's best interests. This appeal followed.

## II. STANDARDS OF REVIEW

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). We review for clear error the trial court's decision that statutory grounds for termination have been proven by clear and convincing evidence, as well as its determination that termination is in a child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id.* at 41, quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989) (cleaned up). We further review for an abuse of discretion the trial court's decision regarding the factors to consider in making its best-interests determination, including the propriety of a guardianship. *In re COH*, 495 Mich 184, 202; 848 NW2d 107 (2014). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id.*, citing *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). An error of law, such as the application of the wrong legal standard, necessarily constitutes an abuse of discretion. See *In re Bell*, 341 Mich App 596, 602; 991 NW2d 251 (2022).

## III. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court clearly erred by finding a statutory basis warranting termination of her parental rights to LJL. We disagree.

To terminate parental rights, the trial court must find that at least one basis for termination under MCL 712A.19b(3) has been proven by clear and convincing evidence. *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). Termination is warranted under MCL 712A.19b(3)(c)(*i*) if 182 or more days have elapsed since the initial dispositional order and the trial court finds that "[t]he conditions that led to the adjudication continue to exist and there is no

-4-

reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*). The conditions that led to adjudication continue to exist if "the totality of the evidence amply supports" the finding that the parent has not achieved "any meaningful change in the conditions" that led to the trial court assuming jurisdiction of the child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

Here, the record supports the trial court's finding under MCL 712A.19b(3)(c)(*i*) that more than 182 days had elapsed after entry of the initial dispositional order, the conditions that led to the adjudication (i.e., substance abuse, unsuitable housing, and deficient parenting skills) continued to exist, and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering LJL's age. The termination hearing took place on August 28, 2023—205 days after entry of the February 3, 2023 initial dispositional order. The conditions that led to the adjudication included respondent's substance abuse, lack of suitable housing, and deficient parenting skills. Respondent failed to rectify these conditions. At the time of the termination hearing, respondent continued to suffer from addiction and had not sought substance abuse treatment. She failed to appear at any of the dispositional review hearings. She did not participate in parenting classes, and she only visited LJL once between December 2022 and August 2023. DHHS made numerous attempts to contact respondent throughout the proceedings but was only able to reach her on one occasion. In fact, DHHS could not locate respondent during the months leading up to the termination hearing. The totality of the circumstances supported the trial court's finding that respondent had not achieved any meaningful change in the conditions that led to the adjudication. The trial court therefore did not clearly err when it found a statutory basis warranting termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*).[2]

## IV. BEST INTERESTS

Respondent argues that the trial court clearly erred when it found that terminating her parental rights was in LJL's best interests. In doing so, respondent asserts that the trial court abused its discretion by declining to consider the propriety of a guardianship. We conclude that the trial court abused its discretion by applying a blanket policy disfavoring guardianships for children under a specified age. See *In re Timon*, 501 Mich 867 (2017); *In re Affleck/Kutzleb/Simpson*, 505 Mich 858 (2019).[3]

Once a statutory basis for termination of parental rights has been demonstrated, the trial court must terminate parental rights if a preponderance of the evidence establishes that termination is in the best interests of the child. MCL 712A.19b(5); *In re Medina*, 317 Mich App 219, 236-237; 894 NW2d 653 (2016). When determining whether termination is in a child's best interests, the trial court should weigh all evidence available to it, considering a wide variety of factors that

---

[2] Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights. *In re Ellis*, 294 Mich App at 32. We therefore need not address respondent's arguments regarding MCL 712A.19b(3)(g) and (j).

[3] An order of the Michigan Supreme Court is "binding precedent if it constitutes a final disposition of an application and contains a concise statement of the applicable facts and reasons for the decision." *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of the foster home over the parent's home, the length of time the child was in care, the likelihood that the child could be returned to the parent's home in the foreseeable future, and the parent's compliance with the case service plan. See *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015).

The fact that a child is in the care of a relative at the time of the termination hearing is an "explicit factor" that the trial court must consider when determining whether termination is in a child's best interests. *In re Olive/Metts*, 297 Mich App at 43, quoting *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). Under appropriate conditions, a trial court may forego termination and instead place a child in a guardianship. See MCL 712A.19a(8) and (9). A guardianship "allows the child to keep a relationship with the parent when placement with the parent is not possible." *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). A trial court is not required to establish a guardianship in lieu of termination if it is not in the child's best interests to do so. See MCL 712A.19a(9)(c) (providing authority to appoint a guardian for a child and stating that the guardianship may continue until the child is emancipated if the court determines that the guardianship is in the child's best interests); *In re TK*, 306 Mich App at 707 (summarizing the procedures for appointing a guardian and stating that appointment of a guardian is only appropriate after the court has made a finding (1) "that the child cannot be safely returned to the home," (2) that termination of parental rights is "clearly not in the child's best interests[,]" and (3) "that it is in the child's best interests to appoint a guardian."). See also *In re COH*, 495 Mich at 201-202 (interpreting MCL 712A.19c(2) (guardianship after termination) and holding that "the statute simply requires the court to base its decision whether to appoint a guardian on 'the child's best interest.' "). However, a trial court must refrain from implementing a blanket policy disfavoring guardianships and instead must make an individualized determination regarding a child's best interests. *In re Timon*, 501 Mich 867 (2017). See also *In re Affleck/Kutzleb/Simpson*, 505 Mich 858 (2019).

Our Supreme Court addressed a trial court's application of a blanket policy disfavoring guardianships in *In re Timon*, 501 Mich 867 (2017). There, our Supreme Court remanded for the trial court to reconsider whether termination of parental rights served the child's best interests. *Id*. In doing so, it stated that "[t]he trial court judge failed to articulate whether her generalized concerns regarding the lack of permanency and stability for younger children placed with a guardian are present for *this child*." *Id*. It instructed that, on remand, "the trial court shall make an individualized determination as to whether terminating respondent's parental rights is in the best interests of respondent's youngest child *without regard to a generalized policy disfavoring guardianship for children under the age of 14*." *Id*. (emphasis added).

Our Supreme Court similarly addressed DHHS's blanket policy disfavoring guardianships in *In re Affleck/Kutzleb/Simpson*, 505 Mich 858 (2019). There, our Supreme Court explained that DHHS's generalized policy disfavoring guardianships for children under the age of 10 was "inappropriate." *Id*. It remanded with instructions for the trial court to address the propriety of a guardianship "as part of its best-interest determinations *without regard to a generalized policy disfavoring guardianship for children under the age of 10*." *Id*. (emphasis added).

Here, the trial court adopted the referee's findings and ultimate conclusion that terminating respondent's parental rights was in LJL's best interests. In reaching this conclusion, the referee

stated that a guardianship was "not an option." He explained that the trial court "generally frowns upon guardianships for children under 10 years old . . ." and opined that guardianships "are the furthest thing in the world from permanency or stability." He then raised concern over other guardians' propensity to terminate guardianships during children's teenage years. The referee went on to conclude that terminating respondent's parental rights was in LJL's best interests on the basis of circumstances specific to LJL. However, because the referee prefaced his analysis by addressing his disapproval for guardianships, we are not able to distinguish the referee's application of a generalized policy disfavoring guardianships from his individualized determination regarding LJL's best interests. We therefore conclude that the trial court abused its discretion by adopting the referee's best-interests determination and remand in order for the trial court to make an individualized determination regarding LJL's best interests without regard to a generalized policy disfavoring guardianship. See *In re Timon*, 501 Mich 867 (2017). See also *In re Affleck/Kutzleb/Simpson*, 505 Mich 858 (2019). On remand, the trial court should refrain from referencing or considering a general policy against guardianships. This includes consideration of a general policy against guardianship for children of a certain age. Rather, the trial court should consider whether guardianship is appropriate for the specific child at the heart of this case.

## V. CONCLUSION

We affirm in part and vacate in part. We affirm the trial court's findings and conclusions regarding statutory grounds. We vacate the trial court's best-interests determination, and remand for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Sima G. Patel
/s/ Noah P. Hood

# Court of Appeals, State of Michigan

## ORDER

IN RE L J LOMBARD MINOR

Docket No.    367714

LC No.       2022-001595-NA

Allie Greenleaf Maldonado
Presiding Judge

Sima G. Patel

Noah P. Hood
Judges

For the reasons stated in the opinion issued with this order, we REMAND this case for further proceedings. We retain jurisdiction. After the remand proceedings conclude, we will review the decisions that the trial court made during those proceedings and consider any remaining issues in this appeal. Any challenges to the trial court's decisions on remand must be raised in this appeal. Therefore, the parties and the trial court must not initiate a new appeal from an order entered on remand within the scope of this appeal. The Clerk of the Court is directed to reject the initiation of a new appeal from such an order.

Appellant must initiate the proceedings on remand within 21 days of the Clerk's certification of this order, and the trial court must prioritize this matter until the proceedings are concluded. As stated in the accompanying opinion, we VACATE the termination order based on the trial court's best-interests analysis because the trial court declined to consider the propriety of a guardianship. This appeared to be based on a blanket policy disfavoring guardianship for children under a certain age. See In re Timon, 501 Mich 867 (2017); In re Affleck/Kutzleb/Simpson, 505 Mich 858 (2019). On remand, the trial court shall make an individualized determination regarding LJL's best interests without regard to a generalized policy disfavoring guardianship On remand, the trial court should consider any new evidence relevant to its determination. It may, but is not required to, hold evidentiary hearings or allow the parties to submit additional briefings. The proceedings on remand are limited to this issue.

The parties must serve copies of their filings in the trial court on this Court. Appellant must file with this Court copies of all orders entered on remand within seven days of entry.

Appellant must ensure the transcript of all proceedings on remand is filed in the trial court and this Court within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

May 30, 2024
Date

_____
Chief Clerk